# SUPREME COURT — APPELLATE DIVISION —

## SECOND DEPARTMENT.

### July 22, 1922.

## THE PEOPLE v. JOSEPH KIERNAN.

(202 App. Div. 542.)

ROBBERY, THIRD DEGREE—EVIDENCE—PROPERTY ALLEGED TO HAVE BEEN STOLEN BY DEFENDANT WHO WAS COMPLAINANT'S BROTHER WAS FOUND BY COMPLAINANT IN HER HOUSE PRIOR TO TRIAL—ERROR TO EXCLUDE EVIDENCE OFFERED BY DEFENDANT THAT COMPLAINANT TRIED TO WITHDRAW CHARGE BEFORE TRIAL.

On a prosecution for robbery it appeared that the complaining witness was a sister of the defendant; that there was a dispute between the defendant and the husband of the complaining witness over wages; that, according to the testimony offered by the prosecution, the defendant went to the house of his sister and insisted upon being paid or receiving her diamonds, and searched a dresser in her presence, and then left the house apparently without taking anything; that it was subsequently discovered upon examination that a cigarette case and stick pin were missing, and that the complaining witness found the articles about two weeks before the trial.

*Held,* that is was error for the court to exclude an answer to a question put to the complaining witness by the defendant as to whether she went to the district attorney's office a short time before the trial and tried to withdraw the charge.

Ordinarily the question would be improper but coupled with the fact that the complainant admitted that she had found the articles alleged to have been stolen, in her own house, an affirmative answer to the question would have justified the jury in believing that the sister herself had some doubt about the actual stealing.

APPEAL by the defendant, Joseph Kiernan, from a judgment of the County Court of the county of Kings, rendered on the 31st day of January, 1922, convicting him of the crime of robbery in the third degree.

*Frank J. Rinaldi,* for the appellant.

*John Francis Moore, Assistant District Attorney (John E. Ruston, District Attorney, with him on the brief), for the respondent.*

KELBY, J.:

The indictment charged three counts: (1) Robbery in the first degree; (2) grand larceny in the second degree, and (3) assault in the second degree. As to robbery, the indictment charged that the defendant, on November 28, 1921, unlawfully took one pearl stickpin of the value of $110, and one gold cigarette case of the value of $125, from the person of Mabel L. Barton against her will by means of force and violence and fear of immediate injury to her person, the defendant at the time being armed with a dangerous weapon, a revolver. The complainant, Mabel L. Barton, is a sister of the defendant Joseph Kiernan. The defendant was employed by Mrs. Barton's husband. Mr. Barton was the president of a transportation shipping corporation, and he hired the defendant as well as the defendant's younger brother. The corporation went into bankruptcy. It appears at the time of the alleged robbery there was owing to this defendant $157 for wages. The defendant thought that his brother-in-law, Mr. Barton, and his sister owed him the money, and on several occasions he called at the Barton household and demanded payment of this money from his sister. It was the contention of the complainant and her husband that these calls were made in the early morning hours, around three o'clock, and that the defendant generally presented himself in an intoxicated condition On one of these occasions—the complainant says at three-thirty A.M. and the defendant at ten P.M.—Mr. Barton threw the defendant out of the house, hitting him on the head with a poker, as Barton says; defendant says he was struck on the head with a black jack. On the 28th of November, 1921, between one and two o'clock in the afternoon, defendant again called on his sister. She was

alone in the house with her two boys, one three and one-half years of age and the other seven. Mrs. Barton says her brother rang the bell, and "I said: 'what do you want?' * * * I said: '.are you going to do me any harm?' He said: 'no.' I said: 'have you got a gun?' He said: 'no.' He said: 'just let me in, I want to talk things over.'" The defendant then demanded the money that.was owed by Mr. Barton's corporation, and the complainant said that her husband owed him no money, that she had paid the money. Defendant then .said: "if you haven't got the money I want your diamonds." The complainant responded: "I haven't got my diamonds, I sold them. He said: 'will you let me go upstairs and see?'" Complainant said yes. Defendant then took a gun from his belt, said he had come there to smash up the cut glass and the furniture which would cost more to replace than the money owed him. Then he said: "I don't think I'll do that, I'll kill you and the two children to make your husband suffer. So he went upstairs. I had a drawer that was locked. He made me open that drawer. I opened it with the key. He went through it. I don't know what he took, but the following day these articles were missing. And then we came downstairs. I said to him: 'if you will go outside, Joe, I'll come to your house the next day, and I'll bring the money you say my husband owes you.'" It then appears that the complainant testified that she knew these two articles were in that drawer the day before defendant compelled her to open it, that is, the stickpin and cigarette case. She says he pointed the revolver "right at" her and that she was afraid. He did not have the revolver in his hand when they were going upstairs. He never said anything about what he had taken. The complainant sat on the bed in her bedroom while her brother went through the drawer, apparently looking for diamonds. Complainant did not look in the drawer until that evening, because she says she was frightened and immediately went to the house of a cousin and called up her hus-

band. On the husband's appearing at her cousin's house they both repaired to their own house and she then searched the drawer, and the stickpin and cigarette case were missing.

The unusual feature of this case is that the missing articles were found in the complainant's house two weeks before the trial. The complainant says that she found them on a shelf in the bottom of a wardrobe, and found them in the corner of the shelf. Concededly the defendant never called at the house after the alleged wrongful act was committed, complainant stating that her youngest brother called once with her mother.

The district attorney made an effort to show that the defendant must have given the stolen articles to his mother, who in turn brought them back to the house and put them in the wardrobe, but the mother and the defendant both deny this and there was no proof in the record from which it can be inferred that any such thing took place. If, as suggested by the district attorney, this was done after the filing of the charge against the defendant, it seems to me a rather poor job was made of it. If the mother smuggled these articles back into the complainant's house, it seems to me she would have put them in a place where they could have been readily found, rather than to hide them on a shelf in the bottom of the wardrobe, in the corner. It is quite as consistent to say that the complainant herself may have misplaced these things, or that her children in the house got hold of them and changed their position. At any rate, it makes a much weaker chain of the defendant's guilt than the chain would be were the defendant caught with the goods in his possession. In the latter case a presumption of guilt would follow the possession of the stolen articles.

In the light of the foregoing, it was error to exclude the following evidence offered by the defendant: " Q. [Examination of the complainant.] Did you subsequently go down on or about two or three weeks ago to the district attorney's office and say you wanted to withdraw the charge? Objected to as incom-

petent, irrelevant and immaterial and improper.    The Court:
Sustained."

Ordinarily the question would be improper, but coupled with
the fact that the complainant admitted that she had found the
articles alleged to have been stolen, in her own house, an affirma-
tive answer to this question would have justified the jury in
believing that the sister herself had some doubt about the actual
stealing.

While the learned trial justice, at the request of defendant's
counsel, charged that before the jury could find the defendant
guilty they must find as a fact that he actually took the articles
as charged in the indictment, still other portions of his charge
are not as clear.   He defined robbery generally, with some slight
variance from section 2120 of the Penal Law.   He did not in-
struct the jury as to what constituted the crime of robbery in the
first degree, nor the second nor third degree.*   In spite of this
lack of information from the learned trial justice, the jury
found the defendant guilty of robbery in the third degree,
although they did not know what it was.

The judgment of conviction should be reversed on the law
and facts, and a new trial granted.

BLACKMAR, P. J., RICH, JAYCOX and YOUNG, JJ., concur.

Judgment of conviction reversed on the law and facts, and
new trial granted.

---

* See Penal Law, §§ 2124, 2126, 2128.—[REP.